UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SAMANTHA POORE-RANDO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, et al., <br><br> Defendants. | CASE NO. C16-5094 BHS <br><br> ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant Ethicon Endo-Surgery, Inc.'s ("Ethicon") motion for summary judgment. Dkt. 44. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion in part and denies it in part for the reasons stated herein.

## I. BACKGROUND

Plaintiff Samantha Poore-Rando filed her complaint on February 6, 2016. Dkt. 1. Plaintiff complains of complications, particularly an anastomotic leak, arising from a medical procedure which included the use of a surgical stapler manufactured by Ethicon. *Id.* She brings claims against Ethicon asserting (1) products liability pursuant to the

Washington Products Liability Act ("WPLA"), and (2) a tortious violation of her right to privacy. Since the filing of the complaint, all defendants except for Ethicon have been dismissed. Dkts. 34, 43.

On July 13, 2017, Ethicon moved for summary judgment. Dkt. 44. On July 31, 2017, Plaintiff responded. Dkt. 48. On August 4, 2017, Ethicon replied. Dkt. 51.

## II.  DISCUSSION

**A.  Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**B.  WPLA**

Ethicon moves for summary judgment on Plaintiff's product liability claims. In Washington, all common law negligence claims premised on product liability have been preempted by the WPLA:

> The WPLA is the exclusive remedy for product liability claims. It supplants all common law claims or actions based on harm caused by a product. Insofar as a negligence claim is product-based, the negligence theory is subsumed under the WPLA product liability claim.

*Macias v. Saberhagen Holdings, Inc.*, 175 Wn.2d 402, 409 (2012) (citations omitted). The WPLA creates manufacturer liability for harm resulting from design defects, RCW 7.72.030(1)(a); manufacturing defects, RCW 7.72.030(2); or warning defects, RCW 7.72.030(1)(b)–(c). Plaintiff has brought claims under each of these theories.

A plaintiff may establish liability for a design or warning defect by using either a risk-utility test or a consumer expectation test. *Ayers v. Johnson & Johnson Baby Prods. Co.*, 117 Wn.2d 747, 759 (1991) (warning defect); *Falk v. Keene Corp.*, 113 Wn.2d 645, 651–52 (1989) (design defect). A plaintiff can establish that a manufacturer is liable for harm arising from a manufacturing defect by showing (1) material deviations in a product's construction or (2) a breach of an express or implied warranty. RCW 7.72.030(2). However, regardless of the type of defect alleged, a Plaintiff must show that the manufacturer's product in some way proximately caused the Plaintiff's harm. RCW 7.72.030(2)(1) ("A product manufacturer is subject to liability to a claimant *if the claimant's harm was proximately caused* by the negligence of the manufacturer in that the product was not reasonably safe as designed or not reasonably safe because adequate warnings or instructions were not provided."); RCW 7.72.030(2) ("A product manufacturer is subject to strict liability to a claimant *if the claimant's harm was proximately caused* by the fact that the product was not reasonably safe in construction or not reasonably safe because it did not conform to the manufacturer's express warranty or to the implied warranties under Title 62A RCW.").

Plaintiff's WPLA claim that she suffered harm proximately caused by an Ethicon product rests entirely on the premise that "[d]uring the course of the surgery, the Ethicon surgical stapler malfunctioned and failed to properly fire, resulting in an incomplete firing stroke and incomplete staple formation, which in turn caused an anastomotic leak . . . ." Dkt. 1 at 6.

Ethicon has provided substantial evidence that the stapler functioned properly and did not cause Plaintiff's anastomotic leak. For instance, an inspection of the stapler after its use showed that it had produced complete "donuts," unbroken rings of tissue removed by firing the stapler, which indicated that the stapler had fired properly. Dkt. 45-1 at 34–35. Additionally, the surgical team's inspection of the staple line and a successful leak test[1] revealed that the line was complete and sealed. Dkt. 45-1 at 36–37. In fact, Dr. James A. Sebesta, M.D., one of the surgeons who performed Plaintiff's surgery, has testified that the successful leak test means that it was not possible for the stapler to have misfired or otherwise malfunctioned. Dkt. 45-1 at 54 (Q: "Is it possible for the staplers—the stapler not to fire correctly and to have a successful leak test?" A: "No.").

In turn, Plaintiff has failed to offer any admissible evidence to show that the stapler misfired or produced an incomplete staple formation. At most, they cite to a hearsay statement offered by Plaintiff claiming that Dr. Sebesta told her "that the stapler used in the surgery had failed and the staples did not close correctly causing a total break down and leak." Dkt. 48-2 at 3. However, this statement is plainly hearsay. Fed. R. Evid. 801(c), 802.

Plaintiff argues that this statement, despite being hearsay, is nonetheless admissible under the residual exception in Fed. R. Evid. 807. Dkt. 48 at 11–15. The Court disagrees. Plaintiff cites to Fed. R. Evid. 804(b)(3) to suggest that the hearsay statement is similar to a statement against interest in terms of circumstantial reliability. Dkt. 48 at

---

[1] To perform a leak test, the surgical team stretches the connected tissue and then holds it under water inside the patient's abdomen, thus ensuring that the closure is air-tight. Dkt. 45-1 at 36–37.

11–13. However, Plaintiff fails to identify any proprietary or pecuniary interest of Dr. Sebesta that was put at risk by the proffered hearsay statement. *See Cty. of Stanislaus v. Travelers Indem. Co.*, 142 F. Supp. 3d 1065, 1076 (E.D. Cal. 2015) (quoting *Gichner v. Antonio Troiano Tile & Marble Co.*, 410 F.2d 238, 242 (D.C. Cir. 1969) ("A statement is against pecuniary and proprietary interest when it threatens the loss of employment, or reduces the chances for future employment, or entails possible civil liability."). If anything, the proffered hearsay advances Dr. Sebesta's pecuniary and proprietary interests by minimizing the possibility that his "surgeon technique" may have caused the leak, *see* Dkt. 53 at 2, thereby shifting any potential liability for the leak away from himself and his employer as the treatment providers and onto Ethicon as the stapler manufacturer. Moreover, the federal rules also expressly limit the "statements against interest" exception to situations where the declarant is unavailable as a witness, *see* Fed. R. Evid. 804, and Dr. Sebesta is both available to testify and has already been deposed. Dkt. 45-1 at 18. Even if the Court were to view the professional relationship between Dr. Sebesta and Ethicon as an interest within the ambit of the "statement against interest" exception—which it does not—Plaintiff has still failed to address any of the policy considerations that justify the use of such an exception only when the declarant is unavailable as a witness.

Plaintiff also argues that the statement has circumstantial guarantees of trustworthiness because it is corroborated by statements included in a Medwatch report that Plaintiff attributes to Dr. Sebesta. Dkt. 48 at 14–15. However, such a position is mistaken at best, and intentionally misleading at worst. The Medwatch form cited by

Plaintiff was a result of Plaintiff's counsel giving notice to Ethicon that the stapler had allegedly malfunctioned, which in turn triggered Ethicon's reporting obligations to file the Medwatch report with the facts as alleged by Plaintiff's counsel. Dkt. 53 at 1–2 ("[T]he MedWatch report filed for Ms. Poore-Rando's surgery states that the stapler malfunctioned during surgery because plaintiffs' counsel made that statement, although Ethicon has no reason to believe that it is true."). Dr. Sebesta never reported that the stapler malfunctioned, and Plaintiff has failed to present any evidence other than the proffered hearsay statement to suggest that it did. *See* Dkt. 45-1 at 39.

The fact that Plaintiff's proffered hearsay statement is refuted by the repeated and sworn testimony of Dr. Sebesta that the stapler properly functioned further indicates that the hearsay statement lacks circumstantial guarantees of trustworthiness. Moreover, the seemingly incongruent hearsay offered by Plaintiff has a reasonable explanation, as Dr. Sebesta explained as follows:

> I will tell you how I would phrase it when I told the patient that this had happened, and I can understand the confusion. . . . I would say that she had a staple line failure, which is what an anastomotic leak is. It means that somewhere where we made that staple line, there's now a leak. It doesn't mean that the stapler failed. It doesn't mean that there's—something happened. It could have been too much tension. It could have been poor blood supply. It could have been lots of different reasons for staple line failures. It has nothing to do with the performance of the stapler.

Dkt. 45-1 at 51–52. While the Court cannot weigh the evidence to decide whether or not the stapler misfired, Dr. Sebesta's testimony regarding the leak and his explanation of Plaintiff's offered hearsay illustrates how the hearsay statement proffered by Plaintiff could easily be "the product of faulty perception, memory or meaning, the dangers

against which the hearsay rule seeks to guard." *F.T.C. v. Figgie Int'l, Inc.*, 994 F.2d 595, 608 (9th Cir. 1993) (citation omitted).

Even if the Court were to find that the statement had some qualifying circumstantial guarantees of trustworthiness under the residual exception, Plaintiff has still failed to show that the hearsay statement is the most probative evidence that she can obtain through reasonable efforts. While it is disappointing and understandably frustrating that medical staff disposed of the stapler used in Plaintiff's surgery, as well as the tissue and staples that were subsequently removed, this does not mean that Plaintiff is unable to obtain more probative evidence than the proffered hearsay statement through reasonable efforts. As stated above, Dr. Sebesta is available to testify, under oath, and Plaintiff has failed to indicate how this sworn testimony is less reliable than the hearsay statement attributed to him by Plaintiff. Moreover, Plaintiff has failed to submit any expert testimony to support a theory regarding how the design or construction of the stapler could have resulted in a misfire or improper staple formation, which is certainly more probative than a conclusory hearsay statement asserting that the stapler caused Plaintiff's anastomotic leak.

Nor can Plaintiff rely on the doctrine of res *ipsa locuitur*. *See* Dkt. 48 at 17–18. The doctrine of res *ipsa locuitur* allows for an inference of negligence in favor of the Plaintiff when "(1) the accident or occurrence that caused the plaintiff's injury would not ordinarily happen in the absence of negligence, (2) the instrumentality or agency that caused the plaintiff's injury was in the exclusive control of the defendant, and (3) the plaintiff did not contribute to the accident or occurrence." *Curtis v. Lein*, 169 Wn.2d 884,

891 (2010). Defendants have shown that there are numerous potential causes of the anastomotic leak attendant to Plaintiff's surgery, several of which do not involve negligence. Dkt. 45-1 at 52 ("poor blood supply," "too much tension", or "lots of different reasons"); Dkt. 53 at 2 ("surgeon technique"). Such potential causes were clearly not within the exclusive control of Ethicon. This is not the case of a foreign object being left in the body after surgery, nor has Plaintiff provided any evidence such as expert testimony to support a theory that an anastomotic leak attendant to her type of surgery would not be expected without negligence. *See Pacheco v. Ames*, 149 Wn.2d 431, 438 (2003) (first element of res ipsa locuitor satisfied "(1) [w]hen the act causing the injury is so palpably negligent that it may be inferred as a matter of law, i.e., leaving foreign objects, sponges, scissors, etc., in the body . . . ; (2) when the general experience and observation of mankind teaches that the result would not be expected without negligence; and (3) when proof by experts in an esoteric field creates an inference that negligence caused the injuries.") (quotation marks and citation omitted).

The Court concludes that Plaintiff has failed to offer any admissible evidence to create a genuine dispute of fact as whether the stapler misfired. Accordingly, the Court grants summary judgment in favor of Ethicon on Plaintiff's WPLA claims.

**C.        Invasion of Privacy by Intrusion**

Ethicon also moves for summary judgment on Plaintiff's claim that Ethicon "violated plaintiff Samantha Poore-Rando's rights to privacy and physician/patient privilege by being present during the February 7, 2014 surgical procedure without plaintiff Samantha Poore-Rando's knowledge, waiver of the physician/patient privilege

and/or consent." Dkt. 1 at 8. Washington common law recognizes a "protectable interest in privacy [that] is generally held to involve four distinct types of invasion: intrusion, disclosure, false light and appropriation." *Eastwood v. Cascade Broad. Co.*, 106 Wn.2d 466, 469, 722 P.2d 1295, 1296 (1986). Plaintiff's claim that the presence of an Ethicon sales person at her surgery violated her right to privacy is a claim based on a theory of unlawful intrusion.

Under the intrusion theory, "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person. *Mark v. Seattle Times*, 96 Wn.2d 473, 497 (1981) (quoting Restatement (Second) of Torts § 652B (Am. Law Inst. 1977)). Washington courts have defined such a claim to require that a plaintiff establish the following elements:

> 1. An intentional intrusion, physically or otherwise, upon the solitude or seclusion of plaintiff, or his private affairs
> 2. With respect to the matter or affair which plaintiff claims was invaded, that plaintiff had a legitimate and reasonable expectation of privacy;
> 3. The intrusion would be highly offensive to a reasonable person; and
> 4. That the defendant's conduct was a proximate cause of damage to plaintiff.

*Doe v. Gonzaga Univ.*, 143 Wn.2d 687, 705–06 (2001), *reversed on other grounds*, 536 U.S. 273 (2002).

Ethicon argues for summary judgment on the bases that (1) there was no intrusion on Plaintiff's private affairs, (2) Plaintiff cannot establish that its representative's

presence would be "highly offensive to a reasonable person," and/or (3) Plaintiff did not suffer "damages" from the intrusion. Dkt. 44 at 20.

First, the Court notes that Plaintiff's vague reliance on the HIPAA "privacy rule" in her response cannot be used to establish a per se intrusion or reasonable expectation of privacy. "[T]o the extent that HIPAA universally has been held not to authorize a private right of action, to permit HIPAA regulations to define per se the duty and liability for breach is no less than a private action to enforce HIPAA, which is precluded." *Skinner v. Tel-Drug, Inc.*, CV-16-00236-TUC-JGZ (BGM), 2017 WL 1076376, at *3 (D. Ariz. Jan. 27, 2017), *report and recommendation adopted*, CV-16-00236-TUC-JGZ (BGM), 2017 WL 1075029 (D. Ariz. Mar. 22, 2017) *(*quoting *Sheldon v. Kettering Health* Network, 40 N.E.3d 661, 674 (Ohio Ct. App. 2015)).

Nonetheless, the Court declines to grant Ethicon's motion for summary judgment. The record shows that an Ethicon sales representative was present during Plaintiff's surgery without Plaintiff's knowledge or permission. *See* Dkt. 48-2. An unlawful intrusion can occur "physically or otherwise," *Mark*, 96 Wn.2d at 497, and there is no dispute that Ethicon's representative was physically present during Plaintiff's surgery. In the context of an unauthorized physical intrusion to a surgery, the Court finds that whether such an intrusion would be highly offensive to an ordinary person falls squarely within the province of the jury. Additionally, Plaintiff has submitted evidence that, after learning of the Ethicon representative's presence during surgery, she "felt upset and violated that [the Ethicon representative] was in the room." Dkt. 48-2 at 3. Plaintiff has failed to provide any authority to explain how this response to Ethicon's unpermitted

presence does not constitute actionable damages under an invasion of privacy claim appurtenant to an unlawful intrusion.

Notably, Ethicon cites to several facts suggesting that its representative may have reasonably believed that she was permitted or legally authorized to be present during the surgery. *See* Dkt. 44 at 20. However, Ethicon does not argue that any intrusion caused by the Ethicon representative was not intentional or was permitted. Nor does Ethicon cite any authority to define the parameters of intentionality or permission within the context of an intentional intrusion claim. *See, e.g.*, *O'Donnell v. United States*, 891 F.2d 1079, 1083 (3d Cir. 1989) ("We conclude that an actor commits an intentional intrusion only if he believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act."). Considering Ethicon's present arguments, the Court cannot rule in its favor and therefore denies without prejudice Ethicon's motion for summary judgment on Plaintiff's intentional intrusion claim.

### III. ORDER

Therefore, it is hereby **ORDERED** that Ethicon's motion for summary judgment (Dkt. 44) is **GRANTED in part** and **DENIED in part** as described above.

Dated this 7th day of September, 2017.

BENJAMIN H. SETTLE
United States District Judge