UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SAMANTHA POORE-RANDO, et al., | CASE NO. C16-5094 BHS |
| Plaintiff, | ORDER DENYING MOTION FOR RECONSIDERATION |
| v. | |
| UNITED STATES OF AMERICA, et al., | |
| Defendants. | |

This matter comes before the Court on the motion for reconsideration of Plaintiff Samantha Poore-Rando. Dkt. 56. Also before the Court is Plaintiff's motion to strike. Dkt. 72 at 1–2. The Court denies these motions for the reasons stated below.

## I. BACKGROUND

Plaintiff Samantha Poore-Rando filed her complaint on February 6, 2016. Dkt. 1. Plaintiff complains of complications, particularly an anastomotic leak, arising from a medical procedure which included the use of a surgical stapler manufactured by Defendant Ethicon Endo-Surgery, Inc. ("Ethicon"). *Id.* She brings claims against Ethicon asserting (1) products liability pursuant to the Washington Products Liability Act

ORDER - 1

1 ("WPLA"), and (2) a tortious violation of her right to privacy. Since the filing of the complaint, all defendants except for Ethicon have been dismissed. Dkts. 34, 43.

On July 13, 2017, Ethicon moved for summary judgment. Dkt. 44. On September 7, 2017, the Court entered an order granting and denying in part the motion. Dkt. 55.

On September 20, 2017, Plaintiff moved for reconsideration, ascribing two potential errors to the Court's previous decision. Dkt. 56. In her first argument, Plaintiff claimed that the Court erred in concluding that the Medwatch report issued on April 25, 2014, was generated as a result of Plaintiff's attorney contacting Ethicon about the allegedly defective stapler. Dkt. 56 at 2–3. On October 5, 2017, the Court denied the motion for reconsideration on this ground, noting that the evidence that Plaintiff presented to support her motion did not actually rebut the uncontroverted evidence that (1) the Medwatch report was created only after the office of Plaintiff's attorney contacted Ethicon, and (2) Dr. Sebesta did not actually file any report, notwithstanding the listing of Dr. Sebesta as the "initial reporter" on the face of the Medwatch report because of his role as the treating physician. Dkt. 64.

Plaintiff also argued for reconsideration on the basis that the Court erred when it noted that she "failed to submit any expert testimony to support a theory regarding how the design or construction of the stapler could have resulted in a misfire or improper staple formation . . . ." Dkt. 56 at 3 (quoting Dkt. 55 at 8). Plaintiff pointed the Court's attention to her expert disclosure and report filed on August 4, 2017. *See* Dkt. 49. In light of this report, the Court concluded that it was mistaken in stating that the record lacked such a report when it entered the order granting summary judgment.

On October 5, 2017, the Court requested a response from Ethicon on the issues of "(1) whether good cause exists under Rule 16(b) to amend the scheduling order as to permit the late filing of Plaintiff's expert disclosure and report, and (2) whether the testimony included in the expert report creates a genuine dispute of material fact over the existence of a defect." Dkt. 64. On October 16, 2017, Ethicon filed its response. Dkt. 66. Ethicon also filed a declaration by Dr. C. Neal Ellis. Dkts. 69–71. On October 19, 2017, Plaintiff replied, simultaneously moving to strike the declaration of Dr. Ellis on the basis that it was unsigned. Dkt. 72.

## II. DISCUSSION

### A. Motion to Strike

Plaintiff moves to strike the Declaration of Dr. Ellis (Dkt. 69) on the basis that the first copy filed by Ethicon was unsigned and the signed version was filed a day late. Dkt. 72 at 1–2. Ironically, Plaintiff makes this request notwithstanding the fact her motion for reconsideration is predicated on an expert report that was filed nearly a month after the scheduling order's deadline, without leave, after the deadline had already lapsed for her opposition to Ethicon's summary judgment motion. Ethicon diligently filed its praecipe to attach the appropriately signed declaration the day after the unsigned (but otherwise identical) version was timely filed. Dkt. 70. None of the cases cited by Plaintiff stand for the proposition that such a praecipe should be rejected. Plaintiff's motion to strike is **DENIED**.

B.     **Motion for Reconsideration**

Motions for reconsideration are governed by Federal Rule of Civil Procedure 60 and Local Rules W.D. Wash. LCR 7(h). LCR 7(h) provides:

> Motions for reconsideration are disfavored. The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence.

The Ninth Circuit has described reconsideration as an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (quoting 12 James Wm. Moore et al., *Moore's Federal Practice* § 59.30[4] (3d ed. 2000)). "[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Id.* (quoting *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)).

Plaintiff filed her disclosure and the expert report of Dr. Yadin David, a biomedical engineer, nearly a month after the deadline established in the Court's Rule 16 scheduling order. *See* Dkts. 49, 50. Because Dr. David's report was filed on the same day as Ethicon's reply on its summary judgment motion, Plaintiff's opposition to summary judgment naturally failed to reference or rely upon the report. Nor did Plaintiff file any supplemental briefing or subsequent motions requesting that the Court consider the report when making its determination on the summary judgment record. These facts create two procedural hurdles before the Court may consider the report.

### 1. The Rule 16(b) "Good Cause" Standard

First, because the report was filed subsequent to the deadline established in the Court's Rule 16 scheduling order, the Court can only consider the report if Plaintiff can establish "good cause" for doing so. Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Reviewing the declaration of Franklin Wilson, it does not appear that Plaintiff was late in obtaining and disclosing the report due to a lack of diligence in pursuing it. *See* Dkt. 58. Instead, it seems that Plaintiff's late receipt of the report was a result of Dr. David's delayed communications and his time spent out of the country. Therefore, because there is no prejudice to Ethicon and no other factors appear to weigh against modifying the scheduling order, the Court concludes that good cause exists to modify the scheduling order as necessary to receive and consider the expert report. *See* Dkt. 58 at 2–3.

### 2. The LCR 7(h) "New Facts" Standard

Second, because the expert report of Dr. David was raised on reconsideration and not in the original opposition to summary judgment, Plaintiff must also overcome the hurdle of establishing that it could not have been brought to the Court's attention earlier with reasonable diligence. Local Rules W.D. Wash. LCR 7(h). This is a closer question than determining good cause for modifying the scheduling order. On one hand, Plaintiff did not receive the expert report until August 4, 2017—after they had already filed their opposition to the summary judgment motion—and they filed the report on the same day. Dkt. 58 at 2; Dkt. 50. This shows that the report itself was not in Plaintiff's possession

while drafting their opposition to summary judgment. However, it is also clear that by July 12, 2017, before Ethicon's motion for summary judgment had been filed, Plaintiff had already requested the report, was in communication with Dr. David, and had received an expected date for the report to be finished. Dkt. 58 at 2, 9. Despite this, Plaintiff made no reference to the expected report in their opposition to summary judgment and declined to seek a continuance of the summary judgment proceedings pursuant to Rule 56(d), which provides a remedy for exactly these types of situations. *See* Dkt. 48. Instead, in opposing summary judgment, Plaintiff relied on a proffered hearsay statement of Dr. Sebesta to suggest that a genuine factual dispute exists as to whether the stapler misfired, which statement the Court found to be inadmissible. *See* Dkt. 55 at 5–8.

Moreover, in her motion for reconsideration, Plaintiff offered no explanation or analysis on how the expert report would allow her to withstand summary judgment. *See* Dkt. 58. Instead, the expert report was referenced only to challenge the Court's previous conclusion that the proffered hearsay statement of Dr. Sebesta was not the most probative evidence available through reasonable efforts, as expert testimony could be substantially more probative as to the existence of a manufacturing defect than the proffered hearsay. *See* Dkt. 56. In that sense, when the Court required a response from Ethicon on the motion for reconsideration, it could be argued that the Court sua sponte raised the argument that the contents of the expert report might be construed to support Plaintiff's claim that the stapler misfired due to a defect. *See* Dkt. 64 at 4. It is only in her reply on the motion for reconsideration that Plaintiff first argues as to how the contents of the report might support the existence of a manufacturing defect, and even then this argument

only arises in the context of discussing the reliability and relevance of Dr. David's report for the purpose of addressing its admissibility under Federal Rule of Evidence 702. *See* Dkt. 72 at 6, 9.

Based on the foregoing, the Court concludes that the expert report does not constitute a "new fact" "which could not have been brought to its attention earlier with reasonable diligence." Plaintiff should have brought it to the Court's attention earlier by actually referencing the then-pending report in her opposition to summary judgment, moving for a continuance, or requesting leave to file supplemental briefing on the report after it was received. Accordingly, any newly raised arguments based on the expert report do not form an appropriate basis for reconsideration.

Regardless, the Court also briefly notes that, even if the report were a "new fact" that could not have been brought to the Court's attention earlier, its contents still fail to create a genuine dispute of fact over the existence of a manufacturing defect for the purpose of withstanding summary judgment. The expert report opines that Ms. Poore-Rando's anastomotic leak was the result of *either* an improper use of the stapler by Dr. Sebesta or a manufacturing defect in the stapler. Dkt. 50 at 10. Plaintiff's expert witness reported that, while the absence of the stapler itself prevented him from "render[ing] a specific reason for the anastomotic leak found after Ms. Poore-Rando's surgery, . . . [e]ither of these opinions will explain the unfortunate outcome . . . ." *Id.* at 10. Notably, nowhere does Dr. David opine that a manufacturing defect more likely than not existed. *See McElroy v. Pac. Autism Ctr. for Educ.*, 14-CV-04118-LHK, 2016 WL 3029782, at *9 (N.D. Cal. May 27, 2016) ("[E]ven if Dr. Miranda's expert report were not untimely and

unauthenticated, Dr. Miranda's expert report . . . is legally insufficient to meet Plaintiff's burden to show through expert evidence that it is more likely than not that the PACE Defendants' conduct caused Plaintiff's injury."). Moreover, Dr. David's opinion regarding the possibility of a defect is based on the purported absence of testimony in Dr. Sebesta's deposition regarding the presence of a "breakaway washer" or "audible and tactile feedback" when the stapler was used. *See* Dkt. 50 at 8–9, 11. However, Dr. Sebesta did testify that the stapler "had a good bite" when it produced the expected flesh "donuts" and that it made the proper sound when firing. Dkt. 67-1 at 12, 14. The existence of the "donuts" is impossible if there is no "breakaway washer," since the washer acts as the "cutting board" type surface against which the flesh must be cut. Dkt. 70 at 7. Accordingly, Dr. David's opinion that the stapler may have malfunctioned due to the absence of a "breakaway washer" is premised on inaccurate data and is disproved by facts that Plaintiff has failed to genuinely dispute. *In re Silberkraus*, 336 F.3d 864, 871 (9th Cir. 2003) ("When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law . . . it cannot support a jury's verdict.") (citation omitted). Plaintiff's motion for reconsideration is **DENIED**.

C. **Modifying the Expert Report**

Finally, the Court notes that Ethicon seeks to prevent Plaintiff from "modifying or revising" Dr. David's report. Dkt. 66 at 18–20. The Court need not address this issue, as Plaintiff has stated that she does not seek to do so. *See* Dkt. 72 at 10.

### III. ORDER

Therefore, it is hereby **ORDERED** that Plaintiff's motion to strike (Dkt. 73) and motion for reconsideration (Dkt. 56) are **DENIED**.

Dated this 17th day of November, 2017.

_____
BENJAMIN H. SETTLE
United States District Judge